# REPORTS.

## GRAFTON,

### DECEMBER TERM, A. D. 1845.

### BREWER *v.* HYNDMAN.

The statute authorizing mortgagors to institute petitions for redemption of the mortgaged premises, includes any person having the right and title of the mortgagor; and extends to cases where the mort agee, or his assignee, professes to render an account, but does not render a correct one.

The petitioner alleged in his petition that an application had been made to the mortgagee to render an account, and that he refused. On the hearing the petitioner admitted that an account was duly rendered, but offered evidence to show that the mortgage was fraudulent;—*Held*, that the evidence was inadmissible.

If a mortgage is fraudulent and void in its inception, the remedy of any one contesting it, is not by a petition to redeem under the statute, but is by a bill in equity, alleging the fraud, or by a suit at common law.

A purchaser of the right of the mortgagor to redeem, sold by an assignee in bankruptcy, is not entitled to allege that the mortgage was fraudulent and void as against creditors, and therefore invalid as to him.

An auditor may be appointed for the examination of accounts, or an investigation of vouchers, in a petition to redeem; but auditors are not appointed in any case, under the statute authorizing such appointment, unless the case is one which requires such examination or investigation.

When, upon the coming in of the report of an auditor, either party desires to try the case by a jury, if there has not been an issue of fact joined between the parties, suitable issues should be made up under the direction of the court.

The proper mode of making up such an issue, is, for the party having the affirmative to file an allegation of the facts which he asserts, and

VOL. XVIII. 2

for the other party to traverse it. It is not a proper course for a party to traverse the conclusions of the auditor.

A statement made by a party, in a deposition given by him in another cause, may be used in evidence against him, as an admission.

Evidence that a party admitted that he commenced a petition to redeem, from hostility to the other party, is inadmissible in defence of the petition.

An assignee of a right of redemption cannot, in a petition to redeem, avail himself of a mere inadequacy of consideration, as between the mortgagor and mortgagee; but he may show a want or failure of consideration, as the mortgagor himself might have done under a similar petition.

PETITION TO REDEEM; filed under the statute relative to the redemption of property mortgaged.

The petition set forth that on the 8th day of August, 1839, Darius Blodgett, Jr., being seized in his own right in fee of a parcel of land in Lyman, conveyed the same in fee and mortgage to Hyndman, the defendant; that on the 19th of August, 1843, the petitioner had a right to redeem said land from the mortgage, and requested the defendant to make and deliver to him a true account of the sums due and secured by the mortgage, and of the rents and profits received from the mortgaged property, which the defendant refused to do. Whereupon the petitioner prayed that an account might be taken of the said sums, and the rents and profits, under the direction of the court, and that upon payment thereof he might be permitted to redeem.

The defendant filed an answer, alleging that on the 24th of May, 1843, he received a request from the petitioner to furnish an account of all sums of money due on the mortgage, and that on the second day of June,—which was as soon as he conveniently could do so,—he made out a statement of the sums due, signed by him, and which was in his belief true, and caused it to be left at the usual place of abode of the petitioner; that on the 19th of August, 1843, another application was made to him for an account, to which he answered that he had already made one, and

if he made another it would be similar; but stated that he would furnish another in two or three days; before the expiration of which time this petition was served on him; and that within two days afterward he furnished another account similar to the first. To this the petitioner filed the usual replication to an answer in chancery.

From the report of the case, as tried in the court of common pleas, it appeared that the mortgage in question was made to secure the payment of two notes from Blodgett to the defendant, dated August 8, 1839, amounting to $700.

Blodgett afterward filed a petition to be declared a bankrupt, and his right in the premises was purchased by the petitioner at an assignee's sale, May 6, 1843, and he founded his right to redeem upon this purchase.

The petition, at the February term of the court of common pleas, A. D. 1844, was referred to an auditor, who reported that it was conceded by the parties that the account rendered by the petitionee was rendered in due season, and that the only question made was, whether it was a just and true account of all the demands secured by the mortgage described in the petition.

Upon this point the auditor found that the mortgage referred to was made to secure the payment of a note from Darius Blodgett, Jr., to William Hyndman, dated August 8, 1839, for the sum of eighty dollars, payable on demand, with interest; and of another note, between the same parties and of the same date, for the sum of six hundred and twenty dollars; and that nothing has been paid upon either of said notes, but the amount of both is still due to the defendant, and was due on the 19th of August, 1843, and that the defendant had never received any rents and profits of the mortgaged estate.

The petitioner contended before the auditor that there should be a deduction made from the amount due upon the face of the notes, or that they should be rejected entirely,

upon the ground that the notes were in whole or in part fraudulent and void, or without a good and adequate consideration as to creditors, and that he might with his title, and upon this petition, be admitted to show such matters in evidence.

The auditor further reported, that it appeared in evidence that on the 8th day of August, 1839, Blodgett was deeply in debt, many of which debts are still unpaid; that at that time Hyndman owned the land embraced in the mortgage; that Blodgett had erected a frame of a house on the land, with the assent of Hyndman, who had furnished a part of the materials. Blodgett was also indebted to Hyndman, who is his father-in-law, the amount of which indebtedness did not appear with much distinctness. Blodgett and Hyndman had conversation in regard to the conveyance of the land and the settlement of their affairs, and it was then agreed that Hyndman should convey the land to Blodgett; that Blodgett was to proceed and finish the house, and also erect a shed on the premises, and Hyndman was to furnish the materials, and also all such labor as Blodgett could not; and in consideration of said land and the materials and labor to be furnished by Hyndman, and the indebtedness of Blodgett to Hyndman, said notes were executed, and the mortgage given to secure their payment. Blodgett proceeded to finish the house and to erect the shed, and Hyndman furnished various materials for the same; and there was evidence tending to show that he furnished nearly all the materials for the house and shed.

Upon the question of fraud, the auditor reported a statement of facts, and came to the conclusion that he did not feel authorized to find, from the evidence submitted to him, that the notes and mortgage, or the agreement between Blodgett and Hyndman, were made from any actual intent and design to delay or defraud the creditors of Blodgett, and did find that the same was not fraudulent

in fact. He found that the value of the land and the indebtedness of Blodgett to Hyndman were considerably less than the amount of the notes on the 8th day of August, 1839 ; but that, notwithstanding the facts stated, the defendant was entitled to receive, in this case, the full amount of the notes secured in his mortgage, and therefore he did not undertake to find the amount of the indebtedness of Blodgett to Hyndman at that date, or of the value of the materials, &c., furnished by Hyndman after that date, both of which matters were left by the evidence in a good degree of uncertainty.

The plaintiff, being dissatisfied with the report, claimed a right to have the case tried by the jury. The defendant objected, but the court overruled the objection.

The plaintiff, being called on by the defendant for that purpose, gave notice that he traversed certain matters of fact as found by the auditor, which he specified.

The defendant then objected to the further maintenance of the petition, for the following reasons :

1. That the plaintiff, having the interest of the mortgagor, and representing him, could not impute fraud to the deed and contract.

2. That his petition to redeem the mortgage estopped him from alleging it to be fraudulent.

In reply to these objections the plaintiff claimed that he came in as a creditor under the assignee's sale, representing creditors, and having their rights.

The defendant then objected that the plaintiff could not maintain his petition in this form, as the statute gives this proceeding only to the mortgagor.

The court overruled these objections, to which ruling the defendant excepted. The defendant then joined issue upon the matters traversed by the plaintiff.

Upon the trial before the jury, the plaintiff offered in evidence a deposition of the defendant, which had been given relative to an issue between the plaintiff and

Blodgett, formerly tried in the United States district court. It was offered as the admission of the defendant, and stated the agreement between the defendant and Blodgett relative to the land, and the building of the house, &c., with the subsequent transactions between them, for the purpose of showing the amount of the indebtedness of Blodgett at the date of the notes. To this the defendant objected, as irrelevant. The court overruled the objection.

The defendant offered to prove declarations of the plaintiff tending to show that he commenced this petition from feelings of hostility to the defendant, growing out of a former controversy. The court ruled that the evidence was inadmissible.

The court charged the jury, that if there was any fraud or fraudulent intent to cover the property of Blodgett, and cheat or delay his creditors, between the parties, at the time the notes and deeds were given, all would be void, and they would find for the plaintiff, that the defendant was entitled to nothing upon his mortgage ; that if they found no fraud, but found the notes larger than the sum actually due to the defendant, they would then proceed to determine the amount justly due from Blodgett to the defendant at the time when the notes were given, and return that sum by their verdict.

The defendant asked the court to charge, that even if the amount of indebtedness from Blodgett to him, at the time the notes were given, was not equal to the amount of the notes, still, if there was no fraud in fact, the defendant, notwithstanding the inadequacy of the consideration, was entitled to receive the whole amount of his notes. The court declined so to charge, but instructed the jury that if the notes contained more than what was due from Blodgett at the time the notes were given, they would cut them down to what they ought to be.

Brewer v. Hyndman.

The jury returned a verdict that there was due $436 from Blodgett to the defendant at the date of the notes.

The questions arising upon the foregoing case were reserved for the decision of this court.

*Hibbard*, for the defendant, cited 2 Johns. Ch. 1, 22, 23; *Osgood* v. *Franklin*, 1 Met. 84, 93; *Hubbard* v. *Coolidge*, 15 Mass. 58, *ex parte Allen* ; 6 Pick. 427, *Amherst Academy* v. *Cowles* ; Chit. on Con. 7 ; 1 Kinne's Comp. 196, 223 ; 4 Kent 462.

*Livermore*, for the plaintiff. The defendant is entitled to what is equitably due, and no more. 1 Johns. Ch. 478, *Boyd* v. *Dunlap.*

PARKER, C. J. The property which the plaintiff seeks to redeem was mortgaged by Blodgett to the defendant, to secure the payment of two promissory notes. Blodgett became a bankrupt, and this property was inserted in his schedule as subject to this mortgage.

Under these circumstances the assignee appears to have sold it. There is nothing to show that there was, on the part of the assignee, any allegation of fraud, or any sale of any thing else but the right of redemption. The assignee sold the right of the bankrupt; that is, the right to redeem. The plaintiff purchased a right to redeem, and he brings this petition under the statute, to enforce a redemption.

The statute authorizes a petition to the court of common pleas for the discharge of a mortgage and other relief, where the mortgagor, or person having his title, has paid or tendered the amount due, or otherwise performed the condition. And where the mortgagee, or person having his interest, unreasonably refuses, upon request in writing, to make out and deliver to the mortgagor, or his agent, a just and true account of all sums secured by the

mortgage, with the damages and costs occasioned by the non-performance of the condition, and also of all rents and profits received, the court of common pleas, upon petition by the mortgagor, are to determine the amount justly due, after deducting the rents and profits, and, upon the amount being brought into court, shall decree that the mortgage be discharged.

The reason of the matter shows that the term mortgagor is used, in this connection, to denote and include any one having his title, or right to redeem.

The account to be rendered is a just and true account, and a remedy may be sought under this branch of the statute in cases where the mortgagee, or the assignee of the mortgage, professes to render an account, but does not render a correct one. The petitioner seeks to redeem under this clause of the statute. He does not allege any payment or tender, or any performance of the condition. He sets forth the execution of the mortgage, and that he, on the 19th of August, 1843, had the right of redemption, and requested the respondent to deliver to him a true account, which the respondent refused to do. He then prays that an account may be taken, and that he may be permitted to redeem, on payment of the amount.

But the auditor reports, that on the hearing before him it was admitted that the respondent rendered an account in due season, and this seems to have been conceded on the trial before the jury.

The petitioner failed, therefore, to support his allegations ; but he attempted to sustain a right to redeem upon the ground that the mortgage was fraudulent, and that there is, therefore, no cause for redemption. In other words, he claimed in effect to have the absolute title, because the mortgage was fraudulent as to the creditors of Blodgett, and thus void ; and because he, under the sale of Blodgett's assignee, stood with the rights of the creditors. If this were so, a petition that an account might be taken, and that he

might be permitted to redeem upon payment of the sum due, was not his remedy. Such a petition admits a valid mortgage, although perhaps nothing may be due, by reason of payments and the reception of rents and profits.

If the petitioner relied upon facts rendering the mortgage void *ab initio*, he should have filed a bill in equity to set aside the mortgage, or have brought a suit at law.

On the facts before stated, the petitioner is not entitled to allege that the mortgage was fraudulent as to creditors, or to place his case upon that ground. He does not appear to be a creditor, or to have the rights of a creditor in this respect. It was not, as we have seen, on an allegation of fraud, and upon the rights of creditors, that the sale was made under which he purchased and holds whatever title he has. He purchased the right of the mortgagor, and the mortgagor cannot allege against his mortgagee that the mortgage was made to defraud creditors, and thereupon bring a petition to redeem, under the statute, upon the payment of nothing.

Nor could he, in a process of this character, allege a fraud upon himself, rendering the mortgage void, for then he would not ask to redeem.

The mortgagor may allege, in equity, on a proceeding to foreclose, that there has been a failure of the consideration for the note he has given; so he may set up a want of consideration, as he might do at law in an action upon the note; and if the failure or want of consideration be partial, he may claim to redeem, on the payment of the sum actually due. The petitioner may do the same.

But there are other objections to the course of proceeding in this case.

The statute in relation to petitions to redeem provides that if, upon the hearing, any issue of fact shall arise, such issue, if either party elects, may be determined by a jury. There is no provision for the appointment of an auditor. There is, however, a general statute author-

izing the courts to appoint auditors in cases where an examination of accounts or an investigation of vouchers shall be found necessary; and one may be appointed on a petition to redeem, for such purposes. But it is evident that the parties had not found an examination of accounts nor any investigation of vouchers necessary, when they procured the appointment of the auditor in this case; for the matters tried before him seem to have related principally to the alleged fraud, upon which he reports divers facts, and a conclusion that the parties did not intend fraud. And although of opinion that the notes were made for a greater amount than the value of the land, and the indebtedness of Blodgett to the defendant, he does not feel authorized to reduce the amount, and he states no account.

Where an auditor is appointed under the statute, if either party is dissatisfied with his report the case may be tried by the jury, and the report shall be given in evidence to the jury, subject to be impeached by evidence offered by either party. This provision is as well applicable to petitions for the redemption of land, as to other legal proceedings. If no issue has been previously made up, the court, ascertaining the matters of fact in controversy, should direct such issues to be framed as will regularly present those matters for trial. The proper mode of making up an issue is for the party having the affirmative to file an allegation of the fact which he asserts, and for the other to traverse it, concluding with an issue to the country. But here, if any issues have been framed, it would seem that most of them are not upon something alleged by one party and traversed by the other, but upon facts found by the auditor. The issues are raised between the auditor and the petitioner.

The auditor's report was not evidence of the facts found relative to fraud, and it seems not to have been competent evidence of any matter to be submitted to the jury, for it

states no account. *Stevens* v. *Thompson,* 17 N. H. Rep. 103. It sets forth that the value of the house and the indebtedness of Blodgett were considerably less than the amount of the notes, but does not find how much; the auditor deeming the defendant, under the circumstances, entitled to receive the full amount of them.

The ruling of the court, admitting the deposition of the respondent taken in another case, and containing his admissions, was correct. The petitioner was entitled to the benefit of those admissions.

The ruling, excluding the evidence of the declaration of the petitioner, that he commenced the petition from hostility, was right also. He had a right to redeem, whether he proceeded from good or bad motives, and his expression of hostility does not prove that either more or less is due to the defendant.

The amount due, if the transaction was fair, was not to be ascertained by inquiring into the mere inadequacy of the consideration. If Blodgett agreed to give a certain sum for the land, and for an agreement, by the respondent, to assist in building a house upon it, the transaction being fair, it is no defence against the note, that the land, and what was furnished by the defendant toward the house, were not worth so much. That would be a case of mere inadequacy, of which he could not avail himself in the absence of fraud. But if it were agreed that Blodgett should give a note large enough to cover the value of the land and the buildings to be built upon it, because the respondent agreed to furnish materials for them, and so much of the labor as Blodgett was unable to furnish, it being the intention to include and secure to the respondent, by means of the note, all that he should do towards the buildings, then Blodgett received as a consideration only the land and the amount of the labor and materials, if any, actually furnished, and beyond that there is a want or failure of the consideration for the notes, of which the

petitioner may avail himself, as the mortgagor might have done.

The result of our investigation is, that the verdict, and also the report of the auditor, should be set aside, and the case stand for a

*New trial.*